**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAKESH CHAUHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA,<br><br>    Defendants. | CASE No.: 1:21-cv-00036-LJL<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PEIDONG WU TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |

Movant Peidong Wu ("Movant") respectfully submits this memorandum of law in support of Movant's motion for an Order, pursuant to Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the securities of Intercept Pharmaceuticals, Inc. ("Intercept" or the "Company") between September 28, 2019 and October 7, 2020, both dates inclusive (the "Class Period"); and

(b) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On November 5, 2020, this action was filed in the United States District Court for the Eastern District of New York. Case No. 2:20-cv-05377-SJF-SIL, Dkt. No. 1. That same day, an early notice pursuant to the PSLRA advising class members of, inter alia, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Declaration of Laurence M. Rosen ("Rosen Decl."), Ex. 1, filed herewith. On January 1, 2021, this action was transferred to this Court. Case No. 2:20-cv-05377-SJF-SIL, Dkt. No. 10. On January 4, 2021, this case was opened in the United States District Court for the Southern District of New York.

Defendant Intercept is a biopharmaceutical company that focuses on the development and commercialization of therapeutics to treat progressive non-viral liver diseases in the U.S. Intercept's lead product candidate is Ocaliva (obeticholic acid) ("OCA"), an afarnesoid X receptor agonist used for the treatment of primary biliary cholangitis ("PBC"), a rare and chronic liver disease, in combination with ursodeoxycholic acid in adults. The Company is

also developing OCA for various other indications, including nonalcoholic steatohepatitis ("NASH").

The complaint alleges that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Defendants downplayed the true scope and severity of safety concerns associated with Ocaliva's use in treating PBC; (2) the foregoing increased the likelihood of an FDA investigation into Ocaliva's development, thereby jeopardizing Ocaliva's continued marketability and the sustainability of its sales; (3) any purported benefits associated with OCA's efficacy in treating NASH were outweighed by the risks of its use; (4) as a result, the FDA was unlikely to approve the Company's NDA for OCA in treating patients with liver fibrosis due to NASH; and (5) as a result of all the foregoing, the Company's public statements were materially false and misleading at all relevant times.

In 2016, the U.S. Food and Drug Administration ("FDA") granted accelerated approval of Ocaliva for treating PBC. Despite both Intercept and the FDA issuing warnings concerning the risk of overdosing patients with the drug, and multiple reports of severe liver injuries and deaths linked with its use, Defendants continued to tout Ocaliva sales and purported benefits, and its potential indication for treating various other medical conditions. As an example, just two years later, in September 2019, Intercept submitted a New Drug Application ("NDA") to the FDA for OCA to treat patients with liver fibrosis due to NASH.

Then, On May 22, 2020, Intercept reported that the FDA "has notified Intercept that its tentatively scheduled June 9, 2020 advisory committee meeting (AdCom) relating to the company's [NDA] for [OCA] for the treatment of liver fibrosis due to [NASH] has been postponed" to "accommodate the review of additional data requested by the FDA that the

company intends to submit within the next week." On this news, Intercept's stock price fell $11.18 per share, or 12%, to close at $80.51 per share on May 22, 2020.

On June 29, 2020, Intercept issued a press release announcing that the FDA had issued a Complete Response Letter ("CRL") rejecting the Company's NDA for Ocaliva for the treatment of liver fibrosis due to NASH. According to that press release, "[t]he CRL indicated that, based on the data the FDA has reviewed to date," the FDA "has determined that the predicted benefit of OCA based on a surrogate histopathologic endpoint remains uncertain and does not sufficiently outweigh the potential risks to support accelerated approval for the treatment of patients with liver fibrosis due to NASH." The press release further advised, among other things, that the "[t]he FDA recommends that Intercept submit additional post-interim analysis efficacy and safety data from the ongoing REGENERATE study in support of potential accelerated approval and that the long-term outcomes phase of the study should continue." On this news, Intercept's stock price fell $30.79 per share, or 39%, to close at $46.70 per share on June 29, 2020.

Then, on October 8, 2020, news outlets reported that Intercept was "facing an investigation from the [FDA] over the potential risk of liver injury in patients taking Ocaliva, [Intercept's] treatment for primary biliary cholangitis, a rare, chronic liver disease." On this news, Intercept's stock price fell $3.30 per share, or 8%, to close at $37.69 per share on October 8, 2020.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

4

# ARGUMENT

I. **MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

A. **Movant Is Willing to Serve as Class Representative**

Movant has filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

B. **Movant Has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief

5

sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $174,705 in connection with purchases of Intercept securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in the Company's securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

        1.        **Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

        2.        **Movant Is Adequate**

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any

conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Intercept securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movant is a sophisticated investor with 25 years of investing experience who resides in California. Prior to his retirement, Movant was a chief financial officer. Movant holds a Master of Business Administration from the Wharton School of the University of Pennsylvania.

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely movant. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against it that would render Movant inadequate to represent the Class.

### II.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, including reviewing publicly available financial and other documents. Furthermore, the firm has an extensive history of bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order; (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: January 4, 2021                 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim