# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAKESH CHAUHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA,<br><br>Defendants. | Case No. 1:21-cv-00036-LJL-SN |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION FUND AND CITY OF CAPE CORAL MUNICIPAL GENERAL EMPLOYEES' RETIREMENT PLAN FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................1

II. FACTUAL BACKGROUND ....................................................................3

III. ARGUMENT ....................................................................5

A. Teamsters 142 and Cape Coral Are the Most Adequate Plaintiff ..........................5

1. Teamsters 142 and Cape Coral's Motion Is Timely ..................................6

2. Teamsters 142 and Cape Coral Have the Largest Financial Interest in the Relief Sought by the Class ..................................7

3. Teamsters 142 and Cape Coral Satisfy the Requirements of Rule 23 ..................................7

a) Teamsters 142 and Cape Coral's Claims Are Typical .................... 8

b) Teamsters 142 and Cape Coral Are Adequate .............................. 8

B. Teamsters 142 and Cape Coral's Selection of Lead Counsel Should Be Approved ..................................11

IV. CONCLUSION ....................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & Emp't Ret.*
  *Income Sec. Act (ERISA) Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) .................................................................................. 9, 10-11

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*,
  586 F.3d 703 (9th Cir. 2009) ................................................................................................11

*Glauser v. EVCI Career Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ...........................................................................................9

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................8

*Mustafin v. GreenSky, Inc.*,
  Nos. 18 Civ. 11071 (PAE), *et al.*,
  2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ................................................................ 10-11

*Reimer v. Ambac Fin. Grp., Inc.*,
  Nos. 08 Civ. 411(NRB), *et al.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................................................... 10-11

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) ................................................................................................... 7-8, 8

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..............................2, 9

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679....................................................9

The Trustees of the Teamsters Union No. 142 Pension Fund ("Teamsters 142") and City of Cape Coral Municipal General Employees' Retirement Plan ("Cape Coral") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (1) appointing Teamsters 142 and Cape Coral as Lead Plaintiff; (2) approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

**I.     PRELIMINARY STATEMENT**

The above-captioned action (the "Action") asserts claims under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), against Intercept Pharmaceuticals, Inc. ("Intercept" or the "Company") and certain of the Company's executive officers (collectively, "Defendants"). The Action is brought on behalf of persons and entities who purchased Intercept securities between September 28, 2019, and October 7, 2020, inclusive (the "Class Period").

The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the federal securities laws. Specifically, the PSLRA requires a court to appoint as lead plaintiff the movant: (1) making a timely motion under the PSLRA's sixty-day deadline; (2) asserting the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Teamsters 142 and Cape Coral respectfully submit that they are the presumptively "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Teamsters 142 and Cape Coral's motion is timely and their losses of approximately $180,446 under a last-in, first-

1

out ("LIFO") analysis in connection with its transactions in Intercept securities during the Class Period represent the largest known financial interest in the relief sought by the class. *See* Declaration of Geoffrey C. Jarvis in Support of the Motion of the Trustees of the Teamsters Union No. 142 Pension Fund and City of Cape Coral Municipal General Employees' Retirement Plan for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Jarvis Decl."), Exs. A & B. In addition to asserting the largest financial interest, Teamsters 142 and Cape Coral easily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class. *See* Section III.A, *infra*.

As set forth in greater detail in their Joint Declaration, Teamsters 142 and Cape Coral fully understand the Lead Plaintiff's obligations to the class under the PSLRA, and they are willing and able to undertake those responsibilities to guarantee vigorous prosecution of this action. *See* Jarvis Decl., Ex. C. ¶¶ 2-3; 5. Moreover, prior to seeking a role as Lead Plaintiff, representatives from Teamsters 142 and Cape Coral participated in a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their common goals in prosecuting this litigation. *See* Ex. C ¶ 8. Accordingly, Teamsters 142 and Cape Coral have the incentive and ability to supervise and monitor counsel. Moreover, as a sophisticated institutional investors responsible for overseeing more than $800 million in assets, Teamsters 142 and Cape Coral are the prototypical movant envisioned by Congress to serve as Lead Plaintiff under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Finally, Teamsters 142 and Cape Coral have retained experienced and competent counsel to represent the class. Accordingly, Teamsters 142 and Cape Coral respectfully request that their selection of Kessler Topaz as Lead Counsel for the class be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.   FACTUAL BACKGROUND

Intercept, a Delaware corporation headquartered in New York, New York, is a biopharmaceutical company that focuses on the development and commercialization of therapeutics to treat progressive non-viral liver diseases in the United States.

Intercept's lead product candidate is Ocaliva (also known as obeticholic acid or "OCA"), a farnesoid X receptor agonist used for the treatment of primary biliary cholangitis ("PBC"), a rare and chronic liver disease, in combination with ursodeoxycholic acid in adults. The Company is also developing Ocaliva for various other indications, including nonalcoholic steatohepatitis ("NASH"). In 2016, the U.S. Food and Drug Administration (the "FDA") granted accelerated approval of Ocaliva for treating PBC. However, by late 2017, both Intercept and the FDA issued warnings concerning the risk of overdosing patients with the drug and multiple reports of severe liver injuries and death.

Despite these concerns, Defendants continued to tout Ocaliva's sales and purported benefits, and its potential indication for treating various other medical conditions. As alleged in the Action, in doing so, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants downplayed the true scope and severity of safety concerns associated with Ocaliva's use in treating PBC; (2) the

foregoing increased the likelihood of an FDA investigation into Ocaliva's development, thereby jeopardizing Ocaliva's continued marketability and the sustainability of its sales; (3) any purported benefits associated with OCA's efficacy in treating NASH were outweighed by the risks of its use; (4) as a result, the FDA was unlikely to approve the Company's NDA for OCA in treating patients with liver fibrosis due to NASH; and (5) as a result of all the foregoing, the Company's public statements were materially false and misleading at all relevant times.

The truth about Ocaliva began to emerge on May 22, 2020, when Intercept reported that the FDA "has notified Intercept that its tentatively scheduled June 9, 2020 advisory committee meeting (AdCom) relating to the company's [NDA] for [OCA] for the treatment of liver fibrosis due to [NASH] has been postponed" to "accommodate the review of additional data requested by the FDA that the company intends to submit within the next week." On this news, the price of Intercept stock price declined $11.18 per share, or more than 12%, to close at $80.51 per share on May 22, 2020.

Then, on June 29, 2020, Intercept issued a press release announcing that the FDA had issued a Complete Response Letter ("CRL") rejecting the Company's NDA for Ocaliva for the treatment of liver fibrosis due to NASH. According to that press release, "[t]he CRL indicated that, based on the data the FDA has reviewed to date," the FDA "has determined that the predicted benefit of OCA based on a surrogate histopathologic endpoint remains uncertain and does not sufficiently outweigh the potential risks to support accelerated approval for the treatment of patients with liver fibrosis due to NASH." The press release further advised, among other things, that the "[t]he FDA recommends that Intercept submit additional post-interim analysis efficacy and safety data from the ongoing REGENERATE study in support of potential accelerated approval and that the long-term outcomes phase of the study should continue." On this news, the

price of Intercept stock price declined $30.79 per share, or nearly 40%, to close at $46.70 per share on June 29, 2020.

Then, on October 8, 2020, news outlets reported that Intercept was "facing an investigation from the [FDA] over the potential risk of liver injury in patients taking Ocaliva, [Intercept's] treatment for primary biliary cholangitis, a rare, chronic liver disease." On this news, the price of Intercept stock price declined $3.30 per share, or more than 8%, to close at $37.69 per share on October 8, 2020.

**III.    ARGUMENT**

    **A.    Teamsters 142 and Cape Coral Are the Most Adequate Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member or group of class members and shall appoint as lead plaintiff the member or group of members of the class that the court determines to be most capable of adequately representing the interests of class members. *See id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court

shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the movant that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).  The "most adequate plaintiff" presumption may be rebutted only upon "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

Here, Teamsters 142 and Cape Coral are the "most adequate plaintiff" because they: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this motion.  *Id*. § 78u-4(a)(3)(B)(iii)(I).

### 1.    **Teamsters 142 and Cape Coral's Motion Is Timely**

The PSLRA allows any member or group of members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II).  On November 5, 2020, in connection with the filing of the Action, notice was published by *PR Newswire* alerting investors to the pendency of the Action and informing them of the sixty-day deadline to seek appointment as Lead Plaintiff, which is January 4, 2021.  *See* Jarvis Decl., Ex. D.  Accordingly, Teamsters 142 and Cape Coral have timely moved for appointment as Lead Plaintiff through the filing of this motion.

6

### 2. Teamsters 142 and Cape Coral Have the Largest Financial Interest in the Relief Sought by the Class

Teamsters 142 and Cape Coral should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Here, Teamsters 142 and Cape Coral suffered losses of approximately $180,446 under a LIFO analysis in connection with their Class Period purchases of Intercept securities. *See* Jarvis Decl., Exs. A & B. To the best of Teamsters 142 and Cape Coral's knowledge, there is no other movant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Teamsters 142 and Cape Coral have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. Teamsters 142 and Cape Coral Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy. *Id*.

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). At the lead plaintiff selection stage of litigation, only a "preliminary showing" of typicality and adequacy is required. *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (citation omitted).

### a)  Teamsters 142 and Cape Coral's Claims Are Typical

The typicality requirement is satisfied when the presumptive lead plaintiff's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.* (internal quotation marks and citation omitted). Teamsters 142 and Cape Coral satisfy this requirement because, just like all other proposed class members, Teamsters 142 and Cape Coral purchased Intercept securities during the Class Period in reliance upon Defendants' false and misleading statements and suffered damages thereby. Thus, Teamsters 142 and Cape Coral's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other class members. Accordingly, Teamsters 142 and Cape Coral satisfy the typicality requirement of Rule 23.

### b)  Teamsters 142 and Cape Coral Are Adequate

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating a movant's adequacy, courts consider whether: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94 (citations omitted).

Teamsters 142 and Cape Coral are adequate because their interest in vigorously pursuing claims against Defendants—given their substantial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading

statements. There is no potential conflict between Teamsters 142 and Cape Coral's interests and those of the other members of the class, and Teamsters 142 and Cape Coral are fully committed to vigorously pursuing the claims on behalf of the class.

In addition to satisfying the requirements of Rule 23, Teamsters 142 and Cape Coral are the paradigmatic Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial interest in the litigation. *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (noting that "the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [securities class] actions") (internal quotation marks and citation omitted); S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs[.]"); H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Teamsters 142 and Cape Coral are well-aware of the duties the Lead Plaintiff has to oversee and supervise the litigation separate and apart from counsel, and Teamsters 142 and Cape Coral have submitted sworn Certifications and a Joint Declaration attesting to their willingness and ability to fulfill those duties here. *See* Jarvis Decl., Exs. A & C; *see also In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

9

As set forth in their Joint Declaration, Teamsters 142 and Cape Coral are sophisticated institutional investors that have combined assets under management of more than $800 million. Jarvis Decl., Ex. C ¶¶ 2-3.  They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this action.  *Id.* ¶¶ 2-3; 5-8.  Moreover, Teamsters 142 and Cape Coral have already taken measures to ensure the claims of the class are vigorously and effectively prosecuted in the best interests of the class.  For example, as part of their effort to formalize their oversight of this action and before seeking appointment as Lead Plaintiff, representatives of Teamsters 142 and Cape Coral held a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits that the class will receive from the leadership of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA, and the measures the funds have and will take to ensure that the class's claims will be zealously and efficiently litigated.  *Id.* ¶ 8.

In sum, Teamsters 142 and Cape Coral have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the class.  In other words, Teamsters 142 and Cape Coral are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.  *See, e.g.*, *Mustafin v. GreenSky, Inc.*, Nos. 18 Civ. 11071 (PAE), *et al.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class" (citation omitted)); *In re Bank of Am. Corp.*, 258 F.R.D. at 270 (appointing group of institutions as Lead Plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel" (citation omitted)); *Reimer v. Ambac*

10

*Fin. Grp., Inc.*, Nos. 08 Civ. 411(NRB), *et al.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

### B. Teamsters 142 and Cape Coral's Selection of Lead Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citations omitted). Here, Teamsters 142 and Cape Coral have selected and retained Kessler Topaz to serve as Lead Counsel for the class. Teamsters 142 and Cape Coral's selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Jarvis Decl., Ex. E. The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions across the country, including: *In re Kraft Heinz Securities Litigation*, No. 19-cv-01339 (RMD) (N.D. Ill.); *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB)

(S.D.N.Y.); *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (KSH) (CLW) (D.N.J.); *In re Celgene Corp. Securities Litigation*, No. 18-cv-4772 (JMV) (JBC) (D.N.J.); and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-3187 (SJC) (N.D. Ill.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)— which at the time was one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Thus, the Court may be assured that, in the event this motion is granted, the class will receive the highest caliber of legal representation available. Accordingly, Teamsters 142 and Cape Coral's selection of counsel should be approved.

## IV. CONCLUSION

For the reasons discussed above, Teamsters 142 and Cape Coral respectfully request that the Court: (1) appoint Teamsters 142 and Cape Coral as Lead Plaintiff; (2) approve their selection of Kessler Topaz as Lead Counsel for the class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: January 4, 2021                          Respectfully submitted,

                                                          **KESSLER TOPAZ MELTZER**
                                                             **& CHECK, LLP**

<div style="text-align: right;">

*S/ Geoffrey C. Jarvis*
Geoffrey C. Jarvis
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gjarvis@ktmc.com
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff the Trustees of the Teamsters Union No. 142 Pension Fund and City of Cape Coral Municipal General Employees' Retirement Plan, and Proposed Lead Counsel for the Class*

</div>

13