**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAKESH CHAUHAN, Individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>            v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA,<br><br>            Defendants. | Case No.: 1:21-cv-00036-LJL<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF MARGARET H. NEALE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

Plaintiff Margaret H. Neale respectfully submits this memorandum of law in support of her motion for:

(a) appointment as Lead Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and

(b) approval of her selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as Lead Counsel for the litigation.

## PRELIMINARY STATEMENT

Presently pending is the above-captioned securities class action (the "Action") asserting violations of the Exchange Act against Defendants on behalf of all persons or entities (the "Class") who purchased the securities of Intercept Pharmaceuticals Inc. ("Intercept" or the "Company") from September 28, 2019 and October 7, 2020 (the "Class Period").

Under the PSLRA, class action complaints alleging violations of the Exchange Act trigger statutory requirements for selecting the most adequate plaintiff to lead the action (the "Lead Plaintiff"). The presumptive lead plaintiff is the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.

As set forth more fully herein, Ms. Neale, a resident of Canada with over 15 years of investing experience, satisfies these requirements and should be appointed Lead Plaintiff. First, Ms. Neale lost $56,562.56 on her purchases of Intercept securities. Ms. Neale believes that her loss is the largest financial loss in the litigation and her substantial financial interest will ensure her vigorous prosecution of the Class' claims. Second, Ms. Neale satisfies Federal Rules 23(a)(3) and (a)(4), as her claims are typical of the claims of the Class, she has no interests that are antagonistic to the Class, and she will fairly and adequately represent the interests of the

1

Class. Additionally, Ms. Neale has selected experienced and qualified counsel that can adequately represent the Class here.

Accordingly, Ms. Neale respectfully requests that the Court grant her motion to appoint her as Lead Plaintiff, and to approve her selection of Bernstein Liebhard as Lead Counsel.

## SUMMARY OF ALLEGATIONS

Intercept is a biopharmaceutical company that focuses on the development and commercialization of therapeutics to treat progressive non-viral liver diseases in the U.S. Intercept's lead product candidate is Ocaliva (obeticholic acid ("OCA")), a farnesoid X receptor agonist used for the treatment of primary biliary cholangitis ("PBC"), a rare and chronic liver disease, in combination with ursodeoxycholic acid in adults. The Company is also developing OCA for various other indications, including nonalcoholic steatohepatitis ("NASH").

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants downplayed the true scope and severity of safety concerns associated with Ocaliva's use in treating PBC; (ii) the foregoing increased the likelihood of an FDA investigation into Ocaliva's development, thereby jeopardizing Ocaliva's continued marketability and the sustainability of its sales; (iii) any purported benefits associated with OCA's efficacy in treating NASH were outweighed by the risks of its use; (iv) as a result, the FDA was unlikely to approve the Company's NDA for OCA in treating patients with liver fibrosis due to NASH; and (v) as a result of all the foregoing, the Company's public statements were materially false and misleading at all relevant times.

On May 22, 2020 Intercept reported that the FDA "has notified Intercept that its tentatively scheduled June 9, 2020, advisory committee meeting (AdCom) relating to the

company's [NDA] for [OCA] for the treatment of liver fibrosis due to [NASH] has been postponed" to "accommodate the review of additional data requested by the FDA that the company intends to submit within the next week."

On this news, Intercept's stock price fell $11.18 per share, or 12.19%, to close at $80.51 per share on May 22, 2020.

On June 29, 2020, Intercept issued a press release announcing that the FDA had issued a Complete Response Letter ("CRL") rejecting the Company's NDA for Ocaliva for the treatment of liver fibrosis due to NASH. According to that press release, "[t]he CRL indicated that, based on the data the FDA has reviewed to date," the FDA "has determined that the predicted benefit of OCA based on a surrogate histopathologic endpoint remains uncertain and does not sufficiently outweigh the potential risks to support accelerated approval for the treatment of patients with liver fibrosis due to NASH." The press release further advised, among other things, that the "[t]he FDA recommends that Intercept submit additional post-interim analysis efficacy and safety data from the ongoing REGENERATE study in support of potential accelerated approval and that the long-term outcomes phase of the study should continue." On this news, Intercept's stock price fell $30.79 per share, or 39.73%, to close at $46.70 per share on June 29, 2020.

Then, on October 8, 2020, news outlets reported that Intercept was "facing an investigation from the [FDA] over the potential risk of liver injury in patients taking Ocaliva, [Intercept's] treatment for primary biliary cholangitis, a rare, chronic liver disease." On this news, Intercept's stock price fell $3.30 per share, or 8.05%, to close at $37.69 per share on October 8, 2020.

## ARGUMENT

**I.      THE COURT SHOULD APPOINT MS. NEALE AS LEAD PLAINTIFF**

### A. The Procedure Required by the PSLRA

The PSLRA establishes a straightforward sequential procedure for selecting a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish a notice (the "Early Notice") to the class within 20 days of filing the action informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as Lead Plaintiff within 60 days after publication of the Early Notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by putative class members in response to an Early Notice by the later of: (i) 90 days after publication of the Early Notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). Finally, in considering any motion to serve as Lead Plaintiff, the Court "shall appoint as lead plaintiff" the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the person that:

i) has either filed the complaint or made a motion in response to an Early Notice;

ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and

iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption "may be rebutted only upon proof" by a putative class member that the presumptively most adequate plaintiff: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth *infra*, Ms. Neale meets the foregoing criteria, and therefore is entitled to the presumption of being the "most adequate plaintiff" of the Class.

### B. Ms. Neale is the Most Adequate Plaintiff

Ms. Neale respectfully submits that she is presumptively the "most adequate plaintiff" because she has made a motion in response to an Early Notice, has the largest financial interest in the relief sought by the Class, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

#### 1. Ms. Neale's Motion is Timely

On November 5, 2020, Pomerantz LLP published the Early Notice via *PRNewswire*. *See* Declaration of Laurence J. Hasson ("Hasson Decl."), Exhibit ("Ex.") A.  Accordingly, putative class members had until January 4, 2021, to file their lead plaintiff motions. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.")

Ms. Neale has timely filed her motion in response to the Early Notice. Additionally, she has filed a sworn certification, pursuant to 15 U.S.C. § 78u-4(a)(2)(A), attesting to her review of the complaint in this action and her willingness to serve as a representative of the Class, including providing testimony at deposition and trial, if necessary. *See* Hasson Decl., Ex. B. Accordingly, Ms. Neale satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2. Ms. Neale Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the plaintiff or movant with "the largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Ms. Neale suffered a substantial loss of $56,562.56 in connection with her purchases of Intercept securities. *See* Hasson Decl., Ex. C. Ms. Neale is not aware of any other movant that has a greater financial interest than her in this litigation. Accordingly, Ms. Neale has the largest financial interest in this litigation.

### 3. Ms. Neale Meets the Requirements of Fed. R. Civ. P. 23

"At this stage of the litigation, in determining whether a movant is the presumptive lead plaintiff under the PSLRA, only a *prima facie* showing that the requirements of Rule 23 are met is necessary." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) (emphasis in original). Ms. Neale satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are "the only [Rule 23] provisions relevant to a determination of lead plaintiff under the PSLRA." *Id.*

### 1. Ms. Neale's Claims Are Typical of Those of the Class

A lead plaintiff movant is typical of other proposed class members under Rule 23 if "its claims…arise from purchases made in reliance on the same alleged misstatements and omissions that the complainants and other movants base their claims on, and they also seek the same relief, based on the same legal theories." *Kukkadapu v. Embraer S.A.*, 2016 WL 6820734, at *2 (S.D.N.Y. Oct. 20, 2016). Ms. Neale's claims are typical of the Class in that she: (i) suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named

defendants; and (ii) bases her claims on the same, or substantially the same, legal theories as the Class. *Id.*

Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include whether:

- Defendants violated the federal securities laws; and

- the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to Ms. Neale as to all members of the Class. Since Ms. Neale's claims have the same essential characteristics as those of the other Class members, the typicality requirement is satisfied.

### 2.   Ms. Neale Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement, in turn, is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015).

Ms. Neale is an adequate Lead Plaintiff. Ms. Neale and the other members of the Class have the same interest: to maximize the recovery from Defendants as a result of the alleged fraud. Because of Ms. Neale's substantial financial stake in the litigation, Class members can be assured that Ms. Neale has the incentive to vigorously prosecute the claims.

Additionally, Ms. Neale has further demonstrated her adequacy through her selection of Bernstein Liebhard as Lead Counsel for the proposed Class. As discussed more fully below, Bernstein Liebhard is highly qualified and experienced in the area of securities class action

7

litigation and has repeatedly demonstrated its ability to prosecute complex securities class action lawsuits both in this District and nationwide.

## II. THE COURT SHOULD APPROVE MS. NEALE'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v).

Bernstein Liebhard has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class. *See* Hasson Decl., Ex. D (Firm Résumé of Bernstein Liebhard). Accordingly, the Court may be assured that by approving Bernstein Liebhard as Lead Counsel, the Class is receiving high-caliber legal representation.

Bernstein Liebhard has frequently been appointed as Lead Counsel or Co-Lead Counsel in securities class action lawsuits since the passage of the PSLRA, and has frequently appeared in major actions in numerous courts throughout the country. Some of the firm's most recent Lead Counsel appointments include *In re Hexo Corp Sec. Litig.*, No. 1:19-cv-10965-NRB (S.D.N.Y.); *Stirling v. Ollie's Bargain Outlet Holdings Inc.*, No. 1:19-cv-08647-JPO (S.D.N.Y.); and *In re Fiat Chrysler Automobiles N.V. Sec. Litig.*, No. 1:19-cv-06770-ERK (E.D.N.Y.).

*The National Law Journal* has recognized Bernstein Liebhard for thirteen years as one of the top plaintiffs' firms in the country. In 2016, Bernstein Liebhard was listed for the eleventh consecutive year in *The Legal 500*, a guide to the best commercial law firms in the United States, as well as in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* for four consecutive years. Bernstein Liebhard was also selected to the *National Law Journal's* annual "America's Elite Trial Lawyers" list for three consecutive years.

Some of Bernstein Liebhard's outstanding successes include:

- *In re Beacon Associates Litigation*, No. 09 CIV 0777 (LBS) (AJP) (S.D.N.Y. 2013) ($219 million settlement);

- *In re Fannie Mae Securities Litigation*, No. 04-1639 (FJL) (D.D.C. 2013) ($153 million settlement);

- *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-CV-11117 (TPG) (S.D.N.Y. 2011) (settlement in excess of $100 million);

- *In re Marsh & McLennan Companies Securities Litigation*, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) ($400 million settlement);

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (U.S.-based settlement amounting to $166.6 million);

- *In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, C.A. No. 8145-VCN (Del. Ch. 2015) ($153.5 million settlement in a shareholder derivative action); and

- *City of Austin Police Retirement System v. Kinross Gold Corp. et al.*, No. 12-CV-01203-VEC (S.D.N.Y. 2012) ($33 million settlement).

Further, Bernstein Liebhard partner Stanley Bernstein served as Chairman of the Executive Committee in *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y. 2009), one of the largest consolidated securities class actions ever prosecuted, resulting in a $586 million settlement.

## CONCLUSION

For the foregoing reasons, Ms. Neale respectfully requests that this Court: (1) appoint her as Lead Plaintiff; and (2) approve her selection of Bernstein Liebhard as Lead Counsel for the litigation

Dated: January 4, 2021                                Respectfully submitted,

/s/Laurence J. Hasson
**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Matthew E. Guarnero
10 East 40th Street

        New York, NY 10016
        Telephone: (212) 779-1414
        Facsimile: (212) 779-3218
        Email:  lhasson@bernlieb.com
               mguarnero@bernlieb.com

*Counsel for Margaret H. Neale and Proposed Lead Counsel for the Proposed Class*

## CERTIFICATE OF SERVICE

      I, Laurence J. Hasson, hereby certify that on January 4, 2021, a true and correct copy of the annexed **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF MARGARET H. NEALE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: January 4, 2021　　　　　　　　　　　　　　　　/s/*Laurence J. Hasson*
　　　　　　　　　　　　　　　　　　　　　　　　　　Laurence J. Hasson