**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAKESH CHAUHAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA, <br><br> Defendants. | CASE No.: 1:21-cv-00036-LJL <br><br> **MEMORANDUM OF LAW OF PEIDONG WU IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** <br><br> **CLASS ACTION** |

Lead Plaintiff Movant Peidong Wu ("Movant" or "Mr. Wu") respectfully submits this opposition to the competing lead plaintiff motions.[1] Dkt. Nos. 20 and 33.

---

[1] On January 6, 2021, Margaret H. Neale filed a notice of non-opposition to the competing motions. Dkt. No. 39. On January 8, 2021, the Fort Lauderdale Police and Fire Retirement System withdrew its motion for appointment as lead plaintiff. Dkt. No. 40. On January 11, 2021, the Trustees of the Teamsters Union No. 142 Pension Fund and the City of Cape Coral Municipal General Employees' Retirement Plan withdrew their motion for appointment as lead plaintiff. Dkt. No. 41. On January 13, 2021, Paul Weller filed a notice of non-opposition to the competing motions. Dkt. No. 45.

1

## PRELIMINARY STATEMENT

Seven lead plaintiff motions were filed in this Court seeking appointment as lead plaintiff and approval of lead counsel, on behalf of purchasers or acquirers of publicly traded securities of Intercept Pharmaceuticals, Inc. ("Intercept" or the "Company") between September 28, 2019 and October 7, 2020, inclusive (the "Class Period").

Mr. Wu lost over $174,000. Dkt. No. 14-3. As explained in his opening papers, Mr. Wu is a sophisticated investor. Dkt. No. 14. Mr. Wu is a retired chief financial officer who earned an MBA from the Wharton School of the University of Pennsylvania and has 25 years of investing experience. *Id*. at 8.

Two movants claim a larger financial interest than Mr. Wu:

- Paul Sapan and Rony Awaida ($1,088,875 in losses) (the "Group") – comprised of two unrelated individuals from California and Ohio represented by three law firms from California and New York; and

- The Richard E. and Melinda Rice Revocable Family Trust 5/9/90 (the "Trust") ($384,567 in losses).

Neither of these competing movants qualify as the presumptive lead plaintiff as they cannot meet Rule 23's typicality and adequacy requirements.  These movants are inadequate and atypical and subject to unique defenses.  The Group is an improper lawyer-made group of unrelated investors that has not provided any specific client-driven reason for its grouping.  No explanation is provided as to why three law firms were retained. The Group also engaged in atypical high frequency trading and substantial options trading. The Trust also engaged in in atypical high frequency trading and substantial options trading. The Trust also engaged in material short sales and made substantial profits.

Of the remaining movants, Mr. Wu has the largest financial interest with over $174,000

in losses. Because Mr. Wu has the largest financial interest in this action *and* also *prima facie* satisfies the adequacy and typicality requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that Mr. Wu is presumed to be the "most adequate plaintiff" and, therefore, should be appointed lead plaintiff on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**<u>ARGUMENT</u>**

**I.    COMPETING MOVANTS CLAIMING LARGER LOSSES THAN MR. WU ARE ATYPICAL AND INADEQUATE**

**A.    The Group is an Improper Lawyer Made Group of Unrelated Investors**

The Group is an improper group of unrelated investors created by counsel.  While courts are divided on the issue of whether unrelated investors are permitted to aggregate their losses, the recent trend is to reject unrelated groups. *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (Liman, J.) (rejecting lead plaintiff group of a "random assemblage of unlike individuals" who "not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (rejecting lead plaintiff group that was "plainly a creation of counsel" and appointing largest individual loss); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (refusing to aggregate losses of lead plaintiff groups because they failed to satisfy the adequacy requirement); *see also Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* 2015 WL 7018024, at *2–3 (S.D.N.Y. Nov. 12, 2015) (rejecting group that failed to provide evidence that their grouping was not the product of lawyer-driven litigation); *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) (rejecting group as it was "cobbled together" for the purpose of achieving lead plaintiff designation and appointing individual with largest loss); *In re Razorfish, Inc. Sec. Litig.*, 143

3

F.Supp.2d 304, 308 (S.D.N.Y. 2001) (rejecting proposed group because it was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff").

While the Group submitted a joint declaration to demonstrate cohesiveness, this boilerplate declaration is insufficient. *Cohen*, 2020 WL 3127808, at *4 (boilerplate claims and the rote recitation of factors is not sufficient); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (court not persuaded by a declaration that the group would function cohesively); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently).

The Group failed to provide any specific client-driven justification for having three law firms on the case. There is simply no need for multiple lead counsel and other counsel in this case—and no justification was given. It appears that this lawyer-driven group is simply represented by different firms and aggregated to create the largest loss. *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation.")); *see also Cohen*, 2020 WL 3127808, at *4 ("From the disparate nature of the [] Group, there is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them— rather than that they gathered together and engaged in a truly independent selection of counsel.")

4

**B.      The Court Should Not Consider the Members of the Group Individually**

The Court should not permit the members of the Group to be considered individually as none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Jakobsen,* 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata,* 2018 WL 5801379, at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts."); *see also In re Level 3 Commc'ns, Inc.,* 2009 WL 10684924, at *5 (D. Colo. May 4, 2009) (declining to consider individual constituents of a group because neither individual "'made a motion' in response to the notice of the putative class action"); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to consider individual constituent of group as lead plaintiff candidate because the group "moved for lead plaintiff as a group and will be evaluated as such")*; In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc.,* 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.").

**C.** **The Group and the Trust Engaged in Atypical High Frequency Trading; The Trust Short Sold Options**

The Group and the Trust engaged in high frequency trading. *See* Dkt. Nos. 24-2 and 35-3. Paul Sapan ("Mr. Sapan") of the Group, often bought multiple sets of shares in a single day, either to entirely sell that set in the days that followed or *on that same day*. Dkt. No. 24-2 at 2-3. Days on which Mr. Sapan bought and sold at least one set of shares include November 5, 2019, December 2, 2019, December 19, 2019, January 2, 2020, January 23, 2020, February 13, 2020, February 14, 2020, February 24, 2020, March 9, 2020, and June 2, 2020. *Id*.

Similarly, the Trust provided nine (9) pages of transactions through multiple accounts and for shares and options. Dkt. No. 35-3 at 3-12. The Trust also often bought multiple sets of shares in a single day, often to entirely sell that set in the days that followed. *Id*. at 3-4. The Trust bought and sold sets of shares on the same day on December 27, 2019. *Id*. at 3. More often, the Trust bought and sold sets of shares over a couple days—such as on November 27 and 29, 2019, December 19 and 20, 2019, February 13 and 14, 2020, and February 20 and 21, 2020. *Id*. at 3-4.

High frequency traders and day traders are routinely precluded as serving as a lead plaintiff. *Eichenholtz v. Verifone Holdings, Inc*., 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding a day trader atypical from the class "because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility"); *Tsirekidze*, 2008 WL 942273, at *4 (finding day trader atypical because such trading "belies any true reliance on company reports or even on the integrity of the stock price itself"); *In re Opnext, Inc. Sec. Litig.,* 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) (finding movant atypical because "[d]ay trading is not commensurate with the manner in which the typical class member sustained alleged losses").

Further, Group member Rony Awaida claims over 40% of his losses from options trades. Likewise, the Trust engaged in significant options trades and actually made a significant profit—$179,584 from its options trading. Dkt. No. 35-3 at 2, 5-12.  Courts have found options traders to be incapable of properly representing a class of stockholders given the fundamental differences between stocks and options. *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (declining to appoint movant with largest financial interest as lead plaintiff whose interest was heavily in options because he was not "an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)" and his appointment "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'"); *Di Scala v. Proshares Ultra Bloomberg Crude Oil, et al.*, 2020 WL 7698321, at *4 (S.D.N.Y. Jul. 28, 2020) (declining to appoint movant as lead plaintiff whose trades heavily involved options because such trades raised unique, substantial questions that threatened to become the focal point of the litigation); *In re Green Tree Fin. Corp. Options Litig.*, No. 97-02679, Dkt. 16 (D. Minn. Jun. 29, 1998) (consolidating securities fraud class actions into two actions: one for stock investors and one for options investors); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) ("[T]he price and value of a single share of common stock is very different from the price and value of a single call option. The options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value."); *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 18 n.87 (Del. Ch. 2003) (recognizing valuation of options is fundamentally different from valuing shares); *see also Micholle v.*

*Ophthotech Corp.,* 2018 WL 1307285, at \*9 (S.D.N.Y. Mar. 13, 2018) (declining to appoint movant that traded in options as lead plaintiff).

Additionally, the Trust's options transactions were primarily short sales (Dkt. No. 35-3 at 5-12)—where the Trust sold call options that it did not previously own—betting that the price of Intercept stock would fall.[2] The typical class member in this case, was not investing in Intercept securities with the hopes the price would fall like the Trust, nor did the typical class member profit from Intercept's stock price decline like the Trust.  Thus, the Trust is atypical and inadequate.  *E.g., In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-1110 (N.D. Cal. 2001) ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *Isaacs v. Musk*, No. 2018 WL 6182753, at \*2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) ("[T]he Court has concerns regarding the adequacy or typicality of [movant] because it is a short seller[.]"); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at \*8 (N.D. Cal. Aug. 19, 2002) (finding movant to be "disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short' during the Class Period."); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at \*3, \*7 (E.D. Tex. Feb. 28, 2014) (finding short selling to be an "atypical trading practice" and holding short seller to be "subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff").

---

[2] "A short call is a bearish trading strategy, reflecting a bet that the security underlying the option will fall in price." https://www.investopedia.com/terms/s/short-call.asp.

**II.    MR. WU SHOULD BE APPOINTED LEAD PLAINTIFF**

The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at \*3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). As discussed above, the Group and the Trust do not meet the requirements of Rule 23. The PSLRA then requires the Court to consider the movant with the next-largest financial interest and undertake the same statutory inquiry with respect to that movant's adequacy and typicality. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008) ("If [the movant alleging the greatest financial interest] does not satisfy the criteria of Rule 23, the Court must repeat the Rule 23 inquiry, this time considering the plaintiff with the next-largest financial stake. The Court so proceeds until it finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23."); *see also In re Cavanaugh,* 306 F.3d 726, 730 (9th Cir.2002).

Here, Mr. Wu is the lead plaintiff movant with the greatest losses who meets the requirements of Rule 23. As set forth herein and in his opening memorandum (Dkt. No. 14), Mr. Wu is not subject to unique defenses and satisfies the requirements of being a lead plaintiff. Furthermore, the class would benefit from Mr. Wu as Lead Plaintiff because he is knowledgeable, has an MBA, and is an experienced trader. *See* Dkt. No. 14 at 8. Moreover, Mr. Wu did not engage in any unusual or atypical trading patterns that would distract from the litigation and subject him to unique defenses.

To overcome the strong presumption entitling Mr. Wu to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists nor has been proffered that Mr. Wu is inadequate to be the

Lead Plaintiff. As Mr. Wu has made a *prima facie* demonstration of his typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Wu should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

## III.   MR. WU'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398; *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.")).

Here, Mr. Wu has selected The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel. The Firm has the resources and expertise to litigate this action efficiently and aggressively. As the Firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 14-4. Indeed, Rosen is one of the preeminent securities class action law firms in the country. Rosen has served as sole and co-lead counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. *Id*. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors – $438,340,000 – and the number of

10

settlements – 12.[3] Founding partner, Laurence Rosen was also recognized by Law360 as a Titan

of Plaintiffs Bar for 2020.[4]

Thus, the Court may be assured that by approving Movant's selection of counsel, the

members of the class will receive excellent legal representation.

**CONCLUSION**

For the foregoing reasons, Mr. Wu's motion should be granted in its entirety and the

competing motions should be denied.

Dated: January 13, 2021                          Respectfully submitted,

                                                 **THE ROSEN LAW FIRM, P.A.**

                                                 /s/ Phillip Kim
                                                 Phillip Kim, Esq. (PK 9384)
                                                 Laurence M. Rosen, Esq. (LR 5733)
                                                 275 Madison Avenue, 40th Floor
                                                 New York, New York 10016
                                                 Telephone: (212) 686-1060
                                                 Fax: (212) 202-3827
                                                 Email: pkim@rosenlegal.com
                                                 Email: lrosen@rosenlegal.com

                                                 *[Proposed] Lead Counsel for Lead Plaintiff and*
                                                 *Class*

---

[3] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.
[4] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim