**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAKESH CHAUHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA,<br><br>Defendants. | Case No. 1:21-cv-00036-LJL |

**RICHARD RICE'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND**
<u>**APPROVAL OF LEAD COUNSEL**</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   THE PSLRA-MANDATED PROCEDURE FOR APPOINTING A LEAD PLAINTIFF 2

III.  RICE IS THE *BONA FIDE* MOVANT WITH THE LARGEST FINANCIAL INTEREST ................................................................................................................ 3

IV.   THE SAPAN/AWAIDA GROUP IS INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF BECAUSE IT IS INADEQUATE AND SUBJECT TO UNIQUE DEFENSES ................................................................................................................ 5

    A.    The Sapan/Awaida Group Consists of Unrelated Members, Cobbled Together by Their Counsel ................................................................................................. 5

    B.    No Individual Sapan/Awaida Group Member Should Be Appointed Individually as Lead Plaintiff ............................................................................................... 10

V.    THE PRESUMPTION THAT RICE IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED .......................................................................................... 13

VI.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 13

VII.  CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

CASES

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) ..............................................................5, 6, 7, 10

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ......................................................................... 11

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................................ 12

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................... 3

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................................... 5

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
No. 20-cv-4420, 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ............................................. 12

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..................................................................................... 10

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................................... 11

*Jakobsen v. Aphria, Inc.*,
2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ......................................................................... 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ............................................................................... 4, 6, 7

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019) ................................................................................ 8, 14

*Landry v. Price Waterhouse Chartered Accountants*,
123 F.R.D. 474 (S.D.N.Y. 1989) ............................................................................................ 12

*McDermid v. Inovio Pharm., Inc.*,
2020 WL 3288189 (E.D. Pa. June 18, 2020) ........................................................................... 11

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) .............................................................................................. 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004)................................................................................ 3

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015) ......................................................................... 4

*Simco v. Aegean Marine Petroleum Network Inc.*,
  2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018)......................................................... 4

*Tan v. NIO Inc.*,
  2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020)............................................................. 8

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015) ....................................................................... 13

*Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009)............................................................................. 13

*Tsirekidze v. Syntax-Brillian Corp.*,
  2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................................................... 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ....................................................................... 6

STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................ 1, 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................... 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)............................................................................ 1, 3, 13

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................ 13

RULES

Fed. R. Civ. P. 23................................................................................................... 1, 2, 3, 5

Richard Rice, as Trustee of the Richard E. and Melinda Rice Revocable Family Trust 5/9/90, ("Rice") submits this memorandum of law in opposition to the six competing motions for appointment as lead plaintiff and approval of lead counsel filed by other putative class members (Dkt. Nos. 12, 15, 17, 20, 25, 29).

## I.  INTRODUCTION

Seven movants (or movant groups) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motions were filed by Rice (Dkt. No. 33), Paul Sapan and Rony Awaida (the "Sapan/Awaida Group") (Dkt. No. 20), and five others (Dkt. Nos. 12, 15, 17, 25, 29).

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant or movant group "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is rebutted the inquiry continues to the movant with the next largest financial interest until a suitable lead plaintiff is identified.

Here, only the Sapan/Awaida Group claims to have a larger financial interest than Rice. However, the Sapan/Awaida Group is ineligible for appointment as lead plaintiff because it is a

group of unrelated individuals, cobbled together by their counsel for purposes of achieving lead plaintiff (and lead counsel) status. Courts routinely reject such motions as being lawyer driven. The same result is warranted here.

Moreover, if any member of the Sapan/Awaida Group argues that he should be considered individually for appointment as lead plaintiff, it would only further confirm the artificialness of the group. Any individual willing to initially sign on to such an ill-conceived group and then abandon the group once it becomes inconvenient should be considered inadequate to represent the class. Regardless, since Sapan and Awaida did not move for appointment individually, they are not entitled to consideration outside the group.

Even if the court were to consider the group members individually, Awaida is subject to unique defenses given that a large portion of his losses came from options transactions, which impacts his adequacy to represent a class of mostly stockholders, and Sapan has a smaller loss than Rice. As such, no individual member of the Sapan/Awaida Group is more suited to be lead plaintiff than Rice.

Rice is the *bona fide* movant with the largest financial interest in the relief sought by the class and satisfies the typicality and adequacy requirements of Rule 23. As such, Rice is the presumptively most adequate plaintiff. Since there is no basis to rebut this presumption, Rice should be appointed as lead plaintiff.

## II.   THE PSLRA-MANDATED PROCEDURE FOR APPOINTING A LEAD PLAINTIFF

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff."   15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff. If the presumption is rebutted, the Court should consider the movant with the next largest financial interest and repeat the process until a suitable lead plaintiff is identified.

## III. RICE IS THE *BONA FIDE* MOVANT WITH THE LARGEST FINANCIAL INTEREST

The PSLRA does not specify a means of calculating the "largest financial interest," and "in the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 406-07 (S.D.N.Y. 2004); *see also In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.").

In their discretion, courts have typically considered four factors to determine which movant has the largest financial interest: (1) the number of shares purchased during the class

period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (collecting cases). Most courts in this District agree that the fourth factor, the largest financial loss, is the most important factor. *Id.* While there are a variety of methods for determining financial loss, courts have recently accepted the "modified LIFO" methodology which excludes securities that were not held at the time of a corrective disclosure from the loss calculation. *See id.*; *see also Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."). Using the modified LIFO method, eliminating all losses and gains on securities not held over a corrective disclosure, Rice has the second-largest loss, behind only the Sapan/Awaida Group, and has the largest loss on stock of any individual:[1]

[Chart on Following Page]

---

[1] The data in this chart is derived from the movants' loss charts.

| Movant | Modified LIFO Loss (Stock) | Modified LIFO Loss (Options) |
|---|---|---|
| *Paul Sapan* | *$312,105.43* | *$0.00* |
| *Rony Awaida* | *$361,850.00* | *$301,675.00[2]* |
| Group Total | $673,955.43 | $301,675.00 |
| Richard Rice | **$ 543,331.39** | $0.00[3] |

Moreover, as explained *infra*, the Sapan/Awaida Group and its individual members are ineligible for appointment as lead plaintiff. Since Rice has the largest financial interest in the relief sought by the class of the *bona fide* movants, filed a timely motion and satisfies the preliminary requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## IV.    THE SAPAN/AWAIDA GROUP IS INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF BECAUSE IT IS INADEQUATE AND SUBJECT TO UNIQUE DEFENSES

### A.    The Sapan/Awaida Group Consists of Unrelated Members, Cobbled Together by Their Counsel

The Sapan/Awaida Group claims to have a larger financial interest than Rice. However, it is a group of unrelated investors, cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," and "based on this history, [] the members of that 'group' c[an] not be counted on to monitor counsel in a sufficient manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Courts in this circuit (and out) routinely reject such groups as inadequate. *See Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293, 2020 WL 3127808,

---

[2] Not all of Awaida's options loss will be recoverable. Options naturally decrease in value as they approach expiration due to a phenomenon called "time decay." *See generally* Investopedia.com, Time Decay, available at https://www.investopedia.com/terms/t/timedecay.asp (last visited January 13, 2020). Awaida will eventually require expert analysis to determine precisely how much of his options loss is attributable to time decay. In addition to inflating his loss, the unique issues Awaida will face associated with time decay is an independent reason to reject his lead plaintiff motion. *See* Section IV.B., *infra*.

[3] Rice does not have an options loss. He has an options gain of $47,153.00.

at *4 (S.D.N.Y. June 12, 2020) (declining to appoint a "random assemblage of unlike individuals" that "had no pre-existing relationship" and "did not even know of one another before counsel introduced them"); *Khunt*, 102 F. Supp. 3d at 533 (declining to appoint a proposed group as lead plaintiff where they "effectively admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call"). In line with this authority, the Sapan/Awaida Group should not be appointed as lead plaintiff.

While the PSLRA permits a group to serve as lead plaintiff, not just any group of unrelated members is permissible. *See Luckin*, 2020 WL 3127808, at *3 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). The group must "proffer an evidentiary showing" that its members "will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Id.* "Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* Here, the factor analysis weighs against appointment of the Sapan/Awaida Group.

Sapan and Awaida admit in their Joint Declaration submitted to the Court (Dkt. No. 24-4) that they have no pre-litigation relationship. Sapan is a food consultant from California and Awaida is a physician from Ohio. *Id.* ¶¶ 3-4. They do not claim to have known each other prior to this litigation and in fact admit they learned of each other "through [] counsel." *Id.* ¶ 7. Accordingly, the first *Varghese* factor weighs against appointment of the Sapan/Awaida Group.

6

*See Luckin*, 2020 WL 3127808, at *4 (rejecting a "random assemblage of unlike individuals" who had "no pre-existing relationship" and "apparently did not even know of one another before counsel introduced them").

Sapan and Awaida's involvement in this litigation so far is limited to some discussion about the case with their counsel, and one conference call with each other the day their lead plaintiff motion was filed. *See* Joint Declaration ¶¶ 6, 7; *Khunt*, 102 F. Supp. 3d at 533 (declining to appoint a proposed group whose "only involvement in the litigation thus far appears to have been a single conference call"). Sapan and Awaida state in their Joint Declaration that on the conference call they "discussed among other things: the allegations and the strength of the claims against Defendants; a strategy for prosecuting the Action; the role of the lead plaintiff and lead counsel selection and litigation process; the benefits that the Class would receive from the leadership of a group of like-minded investors; a shared desire to achieve the best possible result for the Class; our interests in prosecuting the Action in a collaborative likeminded manner, including resolving any disputes; and the actions that we will take to continue to ensure that the claims will be zealously and efficiently litigated." *Id.* ¶ 7. This is the bare minimum expected of any lead plaintiff, and it does not suggest Sapan and Awaida have had significant involvement thus far in the litigation. Moreover, regarding potential disputes between Sapan and Awaida, the Joint Declaration merely states that they "agree to [sic] that our respective voting power will be determined in proportion to the amount of Class Period losses suffered by each group member." *Id.* ¶ 12. In other words, Sapan agreed to a dispute resolution mechanism that provides him no real authority as a lead plaintiff. Accordingly, the second *Varghese* factor weighs against appointment of the Sapan/Awaida Group. *See Luckin*, 2020 WL 3127808, at *4 (rejecting a group that submitted a boilerplate joint declaration attesting that the members "discussed both

7

with our counsel and with one another" the bare minimum expected of a lead plaintiff and provided a problematic dispute resolution mechanism); *Tan v. NIO Inc.*, No. 19-cv-1424, 2020 WL 1031489, at \*4 (E.D.N.Y. Mar. 3, 2020) ("the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward [] represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate").

The Sapan/Awaida Group's communication plan appears to have been thrown together (likely by counsel) on the conference call held the day of their lead plaintiff filing. Sapan and Awaida state in their Joint Declaration that they "discussed the importance of joint decision-making and maintaining communication that will enable each of us to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure that we will be able to make timely decisions" and that "we have agreed that proposed co-lead counsel will provide us with periodic status reports and hold regular joint calls to discuss" important events in the case. This is, again, the bare minimum expected of a lead plaintiff. Sapan and Awaida do not provide any explicit plan to communicate with each other apart from counsel. Accordingly, the third *Varghese* factor weighs against appointment of the Sapan/Awaida Group. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("vague discussions of general communication protocols and status reports hashed out over preliminary conference calls" and "boilerplate plans for cooperation" did not establish that a proposed group would work effectively and cohesively as lead plaintiff) (citing *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011)).

The Sapan/Awaida Group was formed by its counsel. As discussed above, Sapan and Awaida did not know each other before the conference call organized by their counsel held the

8

day their lead plaintiff motion was filed. The two group members are represented by two firms: Scott+Scott Attorneys at Law LLP and Levi Korsinsky, LLP. A third firm is also named in the Sapan/Awaida Group lead plaintiff motion papers (The Schall Law Firm), but it is not clear who the firm represents or what the firm's involvement in the litigation will be. *Compare* Joint Declaration ¶ 3 (Awaida claims "I am also represented by The Schall Law Firm."), *with* Dkt. No. 20 at 2 (listing The Schall Law Firm as "*Additional Counsel for Lead Plaintiff Movant Paul Sapan*").[4] Sapan and Awaida's certifications are on two distinct forms—indicating that they each retained different firms. *See* Dkt. No. 24-1 (Certifications). Though the certifications were signed in late December, Sawan and Awaida did not hold a conference call discussing their joint appointment until the last day to file a timely lead plaintiff motion. This suggests that their separate firms hastily combined them to form a group such that retrieving matching forms would be too much of a time burden.

Moreover, Sapan and Awaida's description of the events leading up to the filing of their motion do not make sense—as if their counsel tried to craft the Joint Declaration to make the Sapan/Awaida Group seem less lawyer-constructed while straining to stick to the facts. Sapan and Awaida first claim that "[w]e decided to retain Scott+Scott Attorneys at Law LLP [] and Levi Korsinsky, LLP [] as our counsel after reviewing the complaints, [and] discussing the merits of the allegations" (*id.* ¶ 7). but then state "[d]uring these discussions, we expressed a willingness to work with other like-minded investors who suffered significant losses." Were Sapan and Awaida both part of these "discussions" together? And if not, how can they claim that "we decided" to retain the two firms after these "discussions"? This is not explained. Sapan and Awaida then state in their Joint Declaration that they "learn[ed] of each other's interest in

---

[4] This issue should be clarified by the Sapan/Awaida Group at the hearing.

seeking appointment as a co-lead plaintiff in this matter through our counsel" and "communicated with one another and counsel via conference call on January 4, 2021." *Id.* ¶ 7. Sapan and Awaida then add that after the call they "decided to . . . seek co-lead plaintiff appointment together." *Id.* ¶ 8. It appears, pushing aside the fog of their counsel's careful crafting, that Sapan independently retained one firm and that Awaida independently retained the other, and then those two firms decided to stick Sapan and Awaida together at the last minute—on the day lead plaintiff motions were due. The Joint Declaration appears to be nothing more than an attempt to manufacture evidence of cohesion and adequacy for a group that was entirely lawyer-constructed. Accordingly, the fifth *Varghese* factor weighs against appointment of the Sapan/Awaida Group. *See Luckin*, 2020 WL 3127808, at *4 ("[T]here is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel.").

Since the Sapan/Awaida Group is a construction of its counsel, cobbled together to achieve lead plaintiff (and lead counsel) status, the *Varghese* factors weigh against appointment of the group as lead plaintiff.

### B.  No Individual Sapan/Awaida Group Member Should Be Appointed Individually as Lead Plaintiff

No member of the Sapan/Awaida Group moved for individual appointment as lead plaintiff. As such, the Court should not consider the members individually. *See Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *4 (S.D.N.Y. Mar. 27, 2019) ("There are no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis. As such, this Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff."); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n.4

(S.D.N.Y. 2015) (refusing to appoint a group member with the largest loss because it "at no time sought to serve as an individual lead plaintiff").[5]

In fact, any such request to be appointed individually at this late stage would be untimely and only serve to further demonstrate the individuals' inadequacy and would be an independent ground to reject their motion. *See Inovio*, 467 F. Supp. 3d at 280 (holding "[t]he Group's eleventh-hour willingness to discard [a member]" demonstrates that it is not cohesive); *Tsirekidze*, 2008 WL 942273, at \*4 ("The willingness to abandon the group only suggests how loosely it was put together.").

Even if the Court were to consider the group members individually—which it should not—Rice would still be the *bona fide* movant with the largest financial interest. First, Rice has a larger financial interest than Sapan, as discussed above, using the widely accepted modified LIFO calculation. Rice also has a larger stock loss than Awaida.

Second, Awaida is subject to unique defenses that render him inadequate to represent the class. $301,675.00 of Awaida's losses come from call options (and the remaining $361,850 from stock). When such a substantial portion of a movant's loss is attributable to options, "[h]e is not . . . an investor whose claims will turn out to be typical of the average common stockholder" and appointment of such a plaintiff "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *Cook v. Allergan PLC*, No.

---

[5] *See also Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008) ("The [] Group moved for lead plaintiff as a group and will be evaluated as such."); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("the Court declines to . . . consider their individual losses" because "the group members have not requested individual consideration"); *McDermid v. Inovio Pharm., Inc.*, 2020 WL 3288189, at \*5 (E.D. Pa. June 18, 2020) ("The Inovio Group 'decided to move together as a group. . . .' That group motion is the one before the Court, and the Court will not retroactively amend it.") (citation omitted).

18-cv12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (citation omitted). The same logic applies with equal force here.

Regardless of whether Defendants attacks on Awaida will be successful, they will certainly become the focus of the litigation at later stages, including class certification. This is enough to disqualify Awaida. *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) ("the Court need not conclude that the defense is likely to or will succeed" since "a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses" is sufficient) (citation and internal quotation marks omitted); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense that is unique to a class representative threatens to dominate or even interfere with that plaintiff's ability to press the claims common to the class, then that threat must be analyzed with care."); *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("whether these defenses will be successful is of no matter" since "[e]ach of these plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market" and "this situation would prejudice absent class members"). Accordingly, Awaida is not eligible for appointment as lead plaintiff.[6]

\*          \*          \*

Rice is the *bona fide* movant with the largest financial interest in the relief sought by the class. Since Rice also filed a timely motion and satisfies the requirements of Rule 23, Rice is the presumptively most adequate plaintiff.

---

[6] This argument applies with equal force to the Sapan/Awaida Group. If Awaida is inadequate or subject to unique defenses, so is the group of which he is a member.

## V.    THE PRESUMPTION THAT RICE IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that Rice is the most adequate plaintiff may be rebutted only upon "proof" that he "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof has been presented. Rice is not aware of any reason he would be incapable of serving as lead plaintiff. In fact, Rice has been managing his own investment portfolio for 50 years. He has an MBA degree from UC Berkeley, and he formerly founded and was the president of a veterinary company. Rice is a sophisticated individual, more than capable of adequately representing the class. As such, Rice should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

## VI.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel."). Accordingly, Rice's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved.

Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to effectively conduct this litigation. *See* Dkt. No. 35-4 (Glancy Prongay & Murray LLP firm résumé). The firm has decades of experience successfully representing injured investors. *See id.* By approving Rice's selection of counsel, the Court will ensure that the class receives the highest

13

caliber of legal representation. Accordingly, Rice's selection of lead counsel for the class should be approved. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) ("Glancy Prongay & Murray LLP, is competent and experienced. Accordingly, this Court grants Glancy Prongay & Murray LLP's motion to be appointed lead counsel.").

## VII.    CONCLUSION

For the foregoing reasons, Richard Rice, as Trustee of the Richard E. and Melinda Rice Revocable Family Trust 5/9/90, respectfully requests that the Court grant his Motion and enter an Order (1) appointing Movant as Lead Plaintiff; (2) approving Movant's selection of Glancy Prongay & Murray LLP as Lead Counsel for the Class; (3) denying the competing motions, and (3) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: January 13, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movant Richard Rice, as Trustee of the Richard E. and Melinda Rice Revocable Family Trust 5/9/90, and Proposed Lead Counsel for the Class*

14

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 13, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 13, 2021, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh