**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAKESH CHAUHAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>INTERCEPT PHARMACEUTICALS, INC., MARK PRUZANSKI, and SANDIP S. KAPADIA,<br><br>    Defendants. | Case No.: 1:21-cv-00036-LJL<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PAUL SAPAN AND RONY AWAIDA'S MOTION FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**

i

## **TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT ................................................................................... 1

II.    ARGUMENT ............................................................................................................. 2

    A.    Sapan & Awaida Are the Presumptive Lead Plaintiffs.................................... 2

    B.    Sapan & Awaida's Lead Plaintiff Presumption Cannot Be Rebutted Here..................... 4

        1.    Sapan & Awaida Are a Small, Cohesive Group that Will Act in the Best Interest of the Class ............................................................................. 5

        2.    Sapan & Awaida Have Selected Highly Qualified Counsel ...................................... 8

III.   CONCLUSION......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................4

*Barnet v. Elan Corp.*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................................................5

*Bruce v. Suntech Power Holdings Co.*,
CV-12-4061, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .....................................................6

*Cohen v. Luckin Coffee Inc.*,
No. 1:20-cv-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ..........................4, 6, 8

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ...............................................................................................6

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ................................4, 8

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &*
*Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009).........................................................................................3

*Kux–Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016)........................................................................................8

*Perez v. HEXO Corp.*,
No. 19 Civ. 10965, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020),
*reconsideration denied sub nom.*, *In re HEXO Corp. Sec. Litig.*, No. 19 Civ.
10965, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020)...............................................................8

*Peters v. Jinkosolar Holding Co., Ltd.*,
No. 11 Civ. 7133 (JPO), 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ...................................5

*Plaut v. Goldman Sachs Grp., Inc.*,
No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ...............................3

*Robb v. Fitbit Inc.*,
16-cv-00151, 2016 WL 2654351 (N.D. Cal. May 10, 2016).....................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................................6

*White Pine Investments v. CVR Refining, LP*,
  No. 20-CV2863-AT, 2021 WL 38155 (S.D.N.Y. Jan. 5, 2021) ...............................................8

**Statutes, Rules, and Regulations**

15 U.S.C.
  §78u–4(a)(3)(B)(i) ...............................................................................................................2
  §78u-4(a)(3)(B)(iii)(I)..........................................................................................................1
  §78u–4(a)(3)(B)(iii)(I)(bb)-(cc)............................................................................................2
  §78u-4(a)(3)(B)(iii)(II) ........................................................................................................4

Federal Rules of Civil Procedure
  Rule 23 ...........................................................................................................................1, 2, 4

Paul Sapan and Rony Awaida ("Sapan & Awaida" or "Movants") respectfully submit this memorandum of law in opposition to the motions for appointment of lead plaintiff and lead counsel filed by: (1) Peidong Wu ("Wu") (ECF No. 12); and (2) Richard Rice, as Trustee of the Richard E. and Melinda Rice Revocable Family Trust 5/9/90 (the "Rice Trust") (ECF No. 33), and in further support of their motion to appoint themselves as co-lead plaintiffs and approve their selection of Scott+Scott and Levi & Korsinsky as co-lead counsel (ECF No. 20).[1]

## I.  SUMMARY OF ARGUMENT

Presently before the Court are three competing motions for appointment as lead plaintiff and approval of lead counsel. Under the PSLRA, the Court "shall" select as lead plaintiff the proper movant with the largest financial interest, as long as that movant is otherwise adequate and typical within the meaning of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Here, Sapan & Awaida are the presumptive lead plaintiffs because their loss of approximately ***$1.08 million*** is, by far, the largest loss alleged by any movant. The movant with the next largest loss, the Rice Trust, has a loss of $384,567, roughly one third the size of the loss asserted by Sapan & Awaida. The losses of the other remaining movants are far smaller still.

Sapan & Awaida are also otherwise adequate and typical within the meaning of Rule 23. Sapan & Awaida have selected two capable national law firms to lead this class action, Scott+Scott and Levi & Korsinsky, both of which have extensive experience in securities litigation and also have experience working together. Further, Sapan & Awaida have demonstrated that they are sophisticated investors, each with decades of investing and business experience. And, they have

---

[1]    Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Sapan & Awaida's motion (ECF No. 20). Competing movants Margaret H. Neale (ECF No. 17), the City of Fort Lauderdale Police and Fire Retirement System (ECF No. 29), the Trustees of the Teamsters Union No. 142 Pension Fund and City of Cape Coral Municipal General Employees' Retirement Plan (ECF No. 15), and (2) Paul Weller (ECF No. 25) have withdrawn their motions or filed a notice of non-opposition to Sapan & Awaida's motion (ECF Nos. 39-41, 45).

combined to form a small, cohesive unit capable of managing their attorneys, including engaging in a conference call to discuss the case, this motion, and how they will work with their attorneys in the best interest of the Class, and negotiating a favorable attorneys' fee cap.  Therefore, pursuant to the PSLRA, the Court "shall" appoint Sapan & Awaida as co-lead plaintiffs.

Accordingly, the Court should deny all competing lead plaintiff motions and grant Sapan & Awaida's motion in full.

## II.    ARGUMENT

### A.    Sapan & Awaida Are the Presumptive Lead Plaintiffs

Sapan & Awaida are the presumptive lead plaintiffs under the PSLRA because they suffered the largest loss of any lead plaintiff movant and otherwise satisfy the typicality and adequacy requirements of Rule 23.  The PSLRA sets up a straightforward leadership selection process wherein the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23.  15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc).  Congress created the lead plaintiff presumption because it believed that the movant, or movants, with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, *inter alia*, the person or group of persons that "has the largest financial interest in the relief sought by the class."  "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." [2]

---

[2]    Unless otherwise noted, citations are omitted and emphasis is added.

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).[3]

The record here is clear that Sapan & Awaida have the largest loss. Comprised of two sophisticated individuals, who have each suffered substantial losses, Sapan & Awaida have a loss of over $1.08 million, which is far higher than the loss suffered by any other lead plaintiff movant, as reflected in the following chart. *Compare* ECF No. 24-2 (loss chart of Sapan & Awaida) *with* ECF No. 35-3 (Rice Trust loss chart), ECF No. 14-3 (Wu loss chart); and ECF No. 28-1 (Weller loss chart).

| Movant | Claimed Loss |
|---|---|
| **Sapan & Awaida** | **$1,088,875** |
| Rice Trust | $384,567[4] |
| Wu | $174,705 |

The second-place movant, Rice Trust, suffered a loss approximately one third the size of the loss suffered by Sapan & Awaida. *Compare* ECF No. 35-3, *with* ECF No. 24-2.[5] Wu (and the rest of

---

[3]  As the foregoing quote from Judge Rakoff demonstrates, a sophisticated "person" such as Sapan or Awaida is certainly a proper lead plaintiff, under the PSLRA.

[4]  The Rice Trust purports to have a loss of $564,151 on its stock transactions but a ***gain*** of $179,584 on options, which are also part of the Class. ECF No. 35-3 at 2. Netting out this loss and gain leads to a total loss of $384,567. *Id.*

[5]  The Rice Trust's Certification of its Class Period transactions (ECF No. 35-2) and its Loss Chart (ECF No. 35-3) raise a number of issues. Seventeen of the Rice Trust's sales of Intercept common stock were purportedly made at prices outside of the historical high-low range for that day. For example, the Rice Trust purports to have sold 100 shares on October 18, 2019 at a price of $61 per share. ECF No. 35-2 at 3. The high-low range for that day, according to Yahoo Finance and Bloomberg, was $65.65-63.49. These may be errors, which have been found to "render [movants] inadequate[.]" *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at \*5 (S.D.N.Y. Sept. 19, 2019). At minimum, they are unexplained. In addition, the Trustee of the Rice Trust, Mr. Richard Rice, who is effectively the lead plaintiff movant, has not attested to any personal details demonstrating his sophistication. The only details provided were made in argument. *See* ECF No. 34 at 8. A background check of Mr. Rice reflects that he is 88 years old.

3

the original movants) have significantly smaller losses.[6]  In addition, Sapan & Awaida each have a larger individual loss than any other movant, individual or group.  Sapan alone lost $456,400 and Awaida lost $632,475.  ECF No. 24-2.  Thus, this is not a case where aggregation of Sapan and Awaida's losses is necessary in order to determine the presumptive lead plaintiff.  Either Sapan or Awaida alone have losses sufficient to make them the presumptive lead plaintiff.

In their opening papers, Sapan & Awaida established that they satisfy the "preliminary" Rule 23 inquiry.  *See* ECF No. 21 at 7-8.  Both Sapan & Awaida are clearly typical of the putative class.  Like all members of the class, they purchased Intercept securities during the Class Period, have claims that arise from the same misleading statements, and suffered economic injuries.  *See, e.g.*, *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 WL 3127808, at *6 (S.D.N.Y. June 12, 2020); *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *4 (S.D.N.Y. Apr. 4, 2018).  They are also adequate because they have no conflicts of interest with the other members of the class, have sufficient interest in the outcome of the case, and have selected counsel that is qualified, experienced, and generally able to conduct this litigation.  *Id.*  Accordingly, Sapan & Awaida are the presumptive lead plaintiff.

## B.    Sapan & Awaida's Lead Plaintiff Presumption Cannot Be Rebutted Here

Because Sapan & Awaida are the presumptive lead plaintiffs, they must be appointed unless the Court is presented with "proof" that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *4 (S.D.N.Y. July 8, 2008) (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).  There is no

---

[6]    Two of Wu's trades, his sale on August 3, 2020, and his purchase on August 27, 2020, are outside the historical price ranges on those days.

4

such evidence here.  Sapan & Awaida, both of whom are based in the United States, are a small cohesive group of just two sophisticated investors, each with decades of investing experience and a significant financial interest in this case.  *See* ECF No. 24-4, ¶¶3-4 (Joint Declaration); ECF No. 24-2 (Loss Chart).  Furthermore, Sapan & Awaida have organized themselves and communicated in an effort to manage their attorneys and achieve the best possible result for the Class.

      **1.**     **Sapan & Awaida Are a Small, Cohesive Group that Will Act in the Best Interest of the Class**

Sapan & Awaida seek to be appointed co-lead plaintiffs together as a small group of two individual investors.  As a preliminary manner, it is important to note that aggregation is not decisive in this lead plaintiff analysis because Awaida alone and Sapan alone each have losses that are significantly larger than the total loss asserted by second-place movant, Rice Trust.  *Compare* ECF No. 24-2 (Loss Chart of Sapan & Awaida) *with* ECF No. 35-3 (Rice Trust Loss Chart).  Under these circumstances, appointment of Sapan & Awaida as a lead plaintiff group is particularly appropriate because "[t]his is simply not a case where a group of unrelated investors has been cobbled together as a 'group' to displace a single competing [] investor, or a smaller, closely-related group of investors."  *Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (appointing unrelated group of six investors where there was no evidence of bad faith and "even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest'"); *see also, e.g.*, *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *8-9 (S.D.N.Y. Mar. 19, 2012) ("[W]here the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then [] policy is not disserved by allowing those individuals to join

together[.]").[7]  As these decisions show, it would be contrary to the policies behind the PSLRA to pass over Sapan & Awaida, who have the largest loss by far, whether considered as a group or individually.

Furthermore, Sapan & Awaida are an appropriate group under the decisions of this Court and this District.  Courts in this District and others routinely appoint unrelated class members as co-lead plaintiffs on a "case-by-case" basis.[8]  *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 n.18 (S.D.N.Y. 2005) (collecting cases and noting that the majority view is that unrelated investors can act together as lead plaintiff if other requirements of adequacy were satisfied); *Luckin*, 2020 WL 3127808, at *5 (appointing two unrelated investors as lead and holding that their lack of prior relationship was not "disqualifying").  *Varghese* identifies five factors that courts use to assess whether a group will be in the interests of the class: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa."  *Varghese*, 589 F. Supp. 2d at 392.

In the Joint Declaration submitted with their opening papers, Sapan & Awaida have provided personal details describing their sophistication and affirmed their obligations as

---

[7]     *See also, e.g.*, *Robb v. Fitbit Inc.*, 16-cv-00151, 2016 WL 2654351, at *5 (N.D. Cal. May 10, 2016) (courts are more willing to appoint a group of unrelated investors if the group contains an individual investor that would otherwise be entitled to the status as presumptive lead plaintiff); *Bruce v. Suntech Power Holdings Co.*, CV-12-4061, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) (same).

[8]     Groups of unrelated plaintiffs seeking appointment as lead are common and counsel for the Rice Trust and the other remaining movants have all sought appointment of such groups, including recently in this District.  *See, e.g.*, *Burr v. Equity Bancshares, Inc.*, No. 19-cv-04346 (S.D.N.Y.) (ECF No. 14) (motion filed by Glancy Prongay & Murray LLP ("Glancy"), counsel for the Rice Trust, on behalf of a group of two individual investors); *In re Micron Technology, Inc. Sec. Litig.*, No. 19-cv-00678 (S.D.N.Y.) (ECF No. 27 (motion filed by Glancy on behalf of a group of two individual investors; *In Re Nokia Corporation Sec. Litig.*, No. 19-cv-03509 (S.D.N.Y) (ECF No. 14) (motion filed by The Rosen Law Firm, P.A ("Rosen"), counsel for Wu, on behalf of a group of two individual investors).

6

representatives of the Class, their desire to achieve the best result for the Class, and their plans for involvement in the litigation and how they will cooperate. *See* ECF No. 24-4. Sapan is a sophisticated investor with approximately 30 years of investing experience, holds a Bachelor's of Science degree, and is Chief Executive Officer of a company. *Id.*, ¶3. Awaida has approximately 18 years of investing experience and is a Doctor of Medicine, currently serving as chief of the gastrointestinal division of a hospital, and as a partner of a private medical practice and other related medical businesses. *Id.*, ¶4.

The involvement of Sapan & Awaida in the litigation thus far has included a joint conference call with counsel during which the following was discussed: the allegations and the strength of the claims against Defendants; strategy for prosecuting the Action; the role of the lead plaintiff and lead counsel; the benefits that the Class would receive from the leadership of a group of like-minded investors; a shared desire to achieve the best possible result for all members of the Class; a method for resolving any disputes; and actions Sapan & Awaida will take to ensure that the claims will be zealously and efficiently litigated. *Id.*, ¶¶7, 9-10.

Sapan & Awaida have demonstrated that they can effectively communicate and manage their counsel. Notably, they chose counsel by, among other things, negotiating with both Scott+Scott and Levi & Korsinsky an attorneys' fee cap of less than the customary 33.3% of any settlement. *Id.*, ¶9. They have also instructed their counsel to provide periodic status updates and hold regular joint calls. *Id.*, ¶11. And, Sapan and Awaida have each other's contact information so they can communicate with or without counsel as they see fit. *Id.*, ¶10. They both live in the United States, in time zones (Eastern and Pacific) that are only three hours apart and thus not an issue for effective communication. *See id.*, ¶¶3-4. In the event of a dispute between the two members of the group, they have agreed to a concrete method of resolution. *Id.*, ¶12. They have

also committed to making themselves "available for any appearances, depositions, and other necessary meetings to facilitate the prosecution of this action" and to review and authorize the filing of litigation documents. *Id.*, ¶11.  Similar declarations have satisfied courts in this District and others, including this Court in *Luckin Coffee.  See Luckin*, 2020 WL 3127808, at *5-6; *see also Perez v. HEXO Corp.*, No. 19 Civ. 10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom.*, *In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965, 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020); *White Pine Investments v. CVR Refining, LP*, No. 20-CV2863-AT, 2021 WL 38155, at *2 (S.D.N.Y. Jan. 5, 2021).

### 2.      Sapan & Awaida Have Selected Highly Qualified Counsel

Sapan & Awaida have further demonstrated that they are adequate by retaining highly qualified and experienced counsel in Scott+Scott and Levi & Korsinsky, firms that also have experience working together on securities class actions.[9]  The adequacy requirement is satisfied where "class counsel is qualified, experienced, and generally able to conduct the litigation," in addition to when there is "no conflict" and the movant "has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kux–Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Orion*, 2008 WL 2811358, at *4-5.

Both firms have substantial experience in the prosecution of securities fraud class actions and possess the necessary resources to efficiently conduct this litigation. *See* ECF No. 24-4 & 24-5 (Firm Resumes).  Specifically, Scott+Scott is an international law firm consisting of over 110 team members, including 75 highly experienced attorneys.  Scott+Scott also includes a team of paralegals, legal assistants, and other support staff including in-house investigators and an e-

---

[9]      The two firms have entered into a Joint Prosecution Agreement for this case and can provide a copy to the Court for *in camera* review.

discovery litigation support group.  Scott+Scott has a long track record of successfully litigating securities and other complex class actions in this District and Circuit.

Scott+Scott has handled some of the biggest class actions in recent years.  In *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, Scott+Scott acted as co-lead counsel against the world's major currency dealers.  No. 1:13-cv-7789 (S.D.N.Y.).  All told, the settlements to date amount to $2.3 billion and were approved in August 2018.  *See generally id.*  As co-lead counsel in another complex class action, Scott+Scott achieved $504.5 million in settlements on behalf of investors in interest rate derivatives, Eurodollar futures and options, and U.S. Treasury futures and options, among other financial instruments, in an antitrust class action alleging manipulation of the ISDAfix benchmark in *Alaska Elec. Pension Fund v. Bank of Am., N.A.*, No. 1:14-cv-07126 (S.D.N.Y.).  As to the quality of Scott+Scott's representation, the Hon. Jesse M. Furman observed at the fairness hearing that:

> I do agree that counsel did an extraordinary job here.  This was I think it is fair to say probably the most complicated case I have had since I have been on the bench.  That is close to seven years at this point.  I have had it much of that seven years.  The point still stands.  I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable job in briefing it and arguing as you have done.  You have in my view done an extraordinary service to the class.

*Id.*, Hearing Tr. dated Nov. 8, 2018, at 27:16-24 (ECF No. 743).

Last year, acting as sole lead counsel, Scott+Scott settled *In re SanDisk LLC Securities Litigation*, No. 3:15-cv-01455 (N.D. Cal.), for $50 million.[10]  Scott+Scott currently serves as court-

---

[10]     Securities class action recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, also include: *Weston v. RCS Capital Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Irvine v. ImClone Sys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); and *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million).

appointed lead or co-lead counsel in various federal securities class actions across the country, including: *Visser v. Energy Recovery, Inc.*, No. 1:20-cv-05647-VM (S.D.N.Y.); *Zhou v. NextCure, Inc.*, No. 1:20-cv-7772-LTS (S.D.N.Y.); *Mo-Kan Iron Workers Pension Fund v. Teligent, Inc.*, No. 1:19-cv-03354-VM (S.D.N.Y.); *Mustafin v. GreenSky, Inc.*, No. 1:18-cv-11071-PAE (S.D.N.Y.); *In re Evoqua Water Techs. Corp. Sec. Litig.*, No. 1:18-cv-10320-AJN (S.D.N.Y.); *Silverberg v. DryShips Inc.*, No. 2:17-cv-04547 (E.D.N.Y.) (co-lead counsel with Levi & Korsinsky); *Robinson v. Diana Containerships Inc.*, No. 2:17-cv-06160 (E.D.N.Y.); *Hill v. MacroGenics, Inc.*, No. 8:19-cv-02713 (D. Md.); *Kanugonda v. Funko, Inc.*, No. 2:18-cv-00812 (W.D. Wash.); and *Corwin v. ViewRay, Inc.*, No. 1:19-cv-02115 (N.D. Ohio).

Levi & Korsinsky, too, has decades of experience litigating complex securities class actions in federal courts throughout the country.  The firm was founded in New York City in 2003, and has quickly expanded to five locations with 10 partners in major judicial hubs.  Levi & Korsinsky has been appointed Lead Counsel in a number of significant class actions in recent years including:  *Scheller v. Nutanix Inc.*, 19-cv-01651-WHO (N.D. Cal.); *In re Tesla Inc. Securities Litigation*, 18-cv-04865-EMC (N.D. Cal); *In re U.S. Steel Consolidated Cases*, 17-559-CB (W.D. Pa.); and *Ford v. TD Ameritrade Holding Corporation*, 14-cv-396 (D. Neb.).  Levi & Korsinsky is very active in this District as well, and has been appointed lead counsel or co-lead counsel in at least 10 securities class actions filed in the United States District Court for the Southern District of New York, during the last two years alone.  *See White Pine Investments v. CVR Refining, LP*, No. 1:20-cv-02863-AT (S.D.N.Y.); *Brown. v. Opera Ltd.*, No. 1:20-cv-00674-JGK (S.D.N.Y.); *Yaroni v. Pintec Technology Holdings Ltd.*, No. 1:20-cv-08062-JMF (S.D.N.Y.); *Baldwin v. Net 1 Ueps Technologies, Inc.*, No. 1:19-cv-11174-PKC (S.D.N.Y.); *In re Baozun, Inc. Sec. Litig.*, No. 1:19-cv-11290-ALC (S.D.N.Y.); *In re Tufin Software Technologies Ltd. Sec. Litig.*, No. 1:20-cv-

05646-GHW (S.D.N.Y.); *In re Sundial Growers Inc., Sec. Litig.*, No. 1:19-cv-08913-ALC (S.D.N.Y.); *Zhang v. Valarais PLC*, No. 1:19-cv-07816-NRB (S.D.N.Y.); *In re Markel Corporation Sec. Litig.*, No. 1:19-cv-00319-RA ( S.D.N.Y.); and *Jakobsen v. Aphria, Inc.*, No. 1:18-cv-11376-GBD (S.D.N.Y).

Moreover, Levi & Korsinsky has recently litigated complex securities actions that resulted in multi-million dollar settlements on behalf of aggrieved shareholders including: *Rougier v. Applied Optoelectronics, Inc.*, C.A. No. 17-cv-2399-VDG-CAB (S.D. Tex.) ($15.5 million); *In re Altisource Portfolio Solutions, S.A. Sec. Litig.*, C.A. No. 14-cv-81156-CIV-WPD (S.D. Fla.) ($15.5 million); *In re Prothena Corporation Plc Sec. Litig.*, 1:18-cv-06425-ALC (S.D.N.Y.) ($15.75 million); *Martin v. Altisource Residential Corporation*, 15-cv-00024-AET-GWC-(D.V.I.) ($15.5 million); *Tung v. Dycom Industries, Inc.*, No. 18-cv-81448-SINGHAL (S.D. Fla.) ($9.5 million); *In re EndoChoice Holdings, Inc. Sec. Litig.*, C.A. No. 2016-cv-277772 (Fulton Cty. Ga.) ($8.5 million, co-lead counsel with Scott+Scott); *Forman v. Meridian Bioscience Inc.*, C.A. No. 1:17-cv-00774 (S.D. Ohio) ($2.1 million).

The resources and experience of both Scott+Scott and Levi & Korsinsky will well serve the putative Class.

## III.   CONCLUSION

For all of the foregoing reasons, and the reasons set forth in their opening papers, Sapan & Awaida respectfully request that the Court grant their motion for appointment of lead plaintiff and lead counsel in full, and deny all competing motions.

Dated: January 13, 2021                     Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ *Adam M. Apton*
Adam M. Apton
Nicholas Porritt

11

55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile:  212-363-7171
aapton@zlk.com
nporritt@zlk.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV
Rhiana L. Swartz
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
Facsimile:  212-233-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Lead Plaintiff Movants Paul Sapan &
Rony Awaida and Proposed Co-Lead Counsel*

**THE SCHALL LAW FIRM**
Brian J. Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067-1604
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Paul
Sapan*

12

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

s/ *Adam M. Apton*
Adam M. Apton
